**LITTLE SWITZERLAND, INC., a Delaware Corporation, and L.S. Wholesale, Inc., a Massachusetts corporation, Plaintiffs,**

v.

**Patrick J. HOPPER, an individual, Defendant.**

**C.A. No. 590.**

Court of Chancery of Delaware, New Castle County.

Submitted: Jan. 13, 2005.
Decided: Jan. 24, 2005.

■

John L. Reed, and Matt Neiderman, Duane Morris, L.L.P., Wilmington, DE; J. Scott Kramer, Duane Morris, L.L.P., Philadelphia, PA, for Plaintiffs.

Richard M. Donaldson, Montgomery, McCracken, Walker & Rhoads, L.L.P., Wilmington, DE; Mark V. Silverio and Brian M. Silverio, Silverio & Hall, P.A., Miami, FL, for Defendant.

STRINE, Vice Chancellor.

The plaintiffs in this case, Little Switzerland, Inc. and L.S. Wholesale, Inc. (collectively, "Little Switzerland"), seek to enjoin arbitration of a claim brought by defendant, Patrick J. Hopper. Hopper was employed as a top executive by Little Switzerland. Under his employment agreement, Hopper was entitled to a payment upon a change in control of Little Switzerland.

A change in control occurred that triggered Hopper's entitlement to payment under his employment contract. Little Switzerland recognized that obligation and made a payment to Hopper. Hopper disputed the amount of the payment. Little Switzerland promptly informed Hopper that it was sticking to its original position.

Rather than promptly invoke the arbitration provision that is the exclusive remedy for him under his employment contract, Hopper waited until eighteen months had elapsed after his claim accrued to seek arbitration.

In this opinion, I address the sole issue raised by the complaint, which is whether Hopper's claim is governed by Delaware's specific statute of limitations governing employment-related claims, 10 *Del. C.* § 8111, or the more general statute of limitations governing claims for breach of contract, 10 *Del. C.* § 8106. Because Hopper's entitlement to payment upon a change of control: (1) clearly falls within the literal reach of § 8111's coverage of claims for "other benefits arising from ... work ... performed," and (2) was premised on services he had already performed as of the time of the change of control, § 8111 applies in accordance with the Supreme Court's teaching in *Goldman v. Braunstein's, Inc.*[1] More generally, I conclude that Delaware courts should resist

---

1. 240 A.2d 577 (Del.1968).

the further erosion of § 8111, by respecting the intention reflected in its plain language to cover in broad terms most claims arising out of the employment relationship.

Because § 8111 applies as a matter of law, I deny Hopper's motion to dismiss, grant Little Switzerland's cross-motion for judgment, and enter a final order enjoining the procession of the arbitration of Hopper's claim.

## I. *Factual Background*

The relevant facts are undisputed and are drawn from the complaint and the documents incorporated in the complaint.

On June 7, 1999, Hopper and Little Switzerland entered into a written employment contract calling for Hopper to serve as Vice President, Chief Financial Officer and Treasurer. As crafted, the employment agreement ran for a year and continued thereafter unless terminated in accordance with its terms.

Most pertinently, as originally written, the employment agreement entitled Hopper to a substantial payment (the "Change In Control Bonus") when the following two events occurred: 1) a "Change In Control" of Little Switzerland; and 2) a subsequent termination or reduction in compensation for Hopper. Thus, the employment contract hinged Hopper's right to a Change In Control Bonus on the pulling of a "double trigger."

According to Hopper (in contentions not drawn from the complaint), Little Switzerland's financial condition was not strong as of the time Hopper joined its management and got worse thereafter, with its securities being delisted from the NASDAQ. Despite this difficulty and inquiries to the company by potential buyers about an acquisition, Hopper stuck with the company, which rewarded him with an enhanced salary and bonus. Hopper also negotiated an important formal amendment to his employment agreement on January 15, 2001, which changed the double trigger required to release the Change In Control Bonus into a single trigger. Under the amended provision, Hopper was entitled to receive payment of the Change In Control Bonus ninety days following a Change In Control of Little Switzerland so long as he was on the job as of that time, regardless of any later events.

After the amendment, Hopper contends that Little Switzerland—the business of which involved retailing luxury goods in tourist areas of the Caribbean and a few other markets—supposedly suffered disproportionately from the horrifying terrorist attacks on this nation on September 11, 2001 and its financial condition worsened further. Despite that, and despite the acquisition of 45% of Little Switzerland's stock by Tiffany & Co. in May 2001, Hopper stayed at his posts.

On October 25, 2002, in a transaction neither of the parties describes, Tiffany acquired 98% of the stock of Little Switzerland. Both Hopper and Little Switzerland agreed that the Tiffany transaction constituted a Change In Control for purpose of Hopper's employment contract and triggered his right to the Change In Control Bonus in ninety days. There is also no dispute that Little Switzerland made a payment to Hopper within ninety days, constituting what it contended was the amount due to Hopper as the Change in Control Bonus.

By letter dated January 17, 2003, Hopper contended that Little Switzerland had miscalculated the Change In Control Bonus due him. On February 2, 2003, Hopper was sent a four page memorandum from Tiffany's General Counsel (and new Little Switzerland director) Patrick Dorsey reaffirming Little Switzerland's belief that the amount it had paid Hopper was proper. The "Dorsey Memo" is referenced in the complaint but a copy is not attached to it.

Under the employment agreement, any claim Hopper had for damages relating to a breach was to be brought through arbitration, with Wilmington, Delaware as the default location in the event that the parties could not agree on an alternative arbitral forum. Likewise, by its express terms, the employment agreement was to be interpreted in accordance with the laws of Delaware.

Even though he knew as of February 2, 2003 that Little Switzerland denied his right to any additional Change In Control Bonus, Hopper did not promptly seek arbitration. Rather, he waited until June 21, 2004—nearly eighteen months later—to send a letter to Little Switzerland proposing that the parties arbitrate Hopper's claim that he was owed a larger Change In Control Bonus.

Little Switzerland then promptly filed this suit on July 23, 2004 seeking to enjoin Hopper from arbitrating his claim. The sole contention in the complaint is that Hopper's demand for arbitration is barred by the applicable statute of limitations.

## II. *Legal Analysis*

Hopper has moved to dismiss the complaint. He argues, based on the facts contained in the complaint and the documents integral to it (which he contends, includes the Dorsey Memo), that the three year statute of limitations generally applicable to breach of contract claims and set forth in 10 *Del. C.* § 8106 governs his claim. Because his demand for arbitration was made well within three years of the accrual date of his claim—which both parties agree occurred on January 6, 2003, ninety days after the Change In Control—Hopper contends that his claim is timely and that Little Switzerland's request to enjoin the arbitration must be dismissed as a matter of law.

Little Switzerland agrees that this case can be decided as a matter of law. But it contends that a plain reading of the employment agreement, as amended, shows that Hopper's claim is governed by 10 *Del. C.* § 8111, which reads in pertinent part as follows:

> *No action for recovery upon a claim for wages, salary, or overtime for work, labor or personal services performed,* or for damages (actual, compensatory or punitive, liquidated or otherwise), or for interest or penalties resulting from the failure to pay any such claim, *or for any other benefits arising from such work, labor or personal services performed* or in connection with any such action, shall be brought after the expiration of one year from the accruing of the cause of action on which such action is based.[2]

The parties' dueling arguments once again present a Delaware trial court with a question about the appropriate spheres of § 8111 and § 8106. The relationship between the statutes is obvious because an employee's entitlement to wages, salary, overtime or other benefits will usually arise out of a written or oral contract that specifies the amount and nature of the reward the employee was to receive for her efforts. Put otherwise, almost every claim for an item specifically mentioned in § 8111 will arise out of a contract generally covered by § 8106.

Being old-fashioned, my preference would be to decide this case based on a reasoned application of the statutory language of the competing provisions, when read in light of ordinary principles of statutory interpretation. In this case, Hopper's claim for a higher Change In Control Bonus obviously falls within the plain lan-

---

**2.** 10 *Del. C.* § 8111 (emphasis added).

guage of the text of § 8111, as it clearly constitutes an action to recover for failure to pay "benefits arising from ... work ... performed" for Little Switzerland. That said, Hopper's claim also clearly involves a claim for breach of contract, and therefore also falls within the literal language of § 8106.

This relationship is not intuitively problematic, however. For example, if one were in (the blissful state of) ignorance regarding the case law parsing § 8111 and § 8106, an obvious thought comes to mind. As the more specific statute addressing contracts and other claims for salary and other benefits arising from "work ... or personnel services performed or in connection with any such action [relating to a claim of that kind]," § 8111 would be thought to address claims arising out of employment contracts, leaving § 8106 to address breach of contract claims involving contracts not covered by a more specific statute of limitations. This intuition would be grounded in a venerable principle of statutory interpretation, well-accepted in Delaware, that specific statutes trump general statutes when the two cannot be reconciled.[3]

But that intuition was not the road taken. Instead, Delaware courts embarked on a different approach to distinguishing between those work-related claims that were governed by § 8106 as opposed to § 8111. Readers interested in delving into the evolution of this jurisprudence may consult a prior decision of this court, *Cochran v. Stifel Financial Corp.*,[4] but those who are not so inclined will be relieved

that I have no intention of replicating that exercise here.

For present purposes, it suffices to explain that the Delaware Supreme Court has set forth a temporal test for determining whether § 8111 or § 8106 applies to a claim. In *Goldman v. Braunstein's, Inc.*,[5] the Delaware Supreme Court held in essence as follows:

> Where a plaintiff's claims arise from services "which have been performed," then the one year period in § 8111 applies. In contrast, where a plaintiff's claims arise "upon or after termination of the employer-employee relationship," then § 8111 is inapplicable and § 8106 applies.[6]

Although the *Goldman* test is hardly scientific, it yields a clear answer in favor of § 8111 in this case. By operation of the plain language of his employment agreement as amended, Hopper became entitled to a Change In Control Bonus by being employed on the date of the Change In Control. That is, by virtue of his having hung in there and remained at Little Switzerland until a Change In Control, Hopper did everything necessary to earn his Change In Control Bonus. Said another way, as a result of services "which have been performed," Hopper earned his Change In Control Bonus. Therefore, under *Goldman*, § 8111 governs his claim.

In resisting this conclusion, Hopper relies upon certain text in the Dorsey Memo, which reads as follows:

> It is axiomatic that the Executive [Hopper] is not seeking a termination benefit

---

**3.** *E.g., Turnbull v. Fink,* 668 A.2d 1370, 1377 (Del.1995) ("Where possible, a court will attempt to harmonize two potentially conflicting statutes dealing with the same subject. If they cannot be reconciled, however, the specific statute must prevail over the general.") (citing *Hamilton v. State,* 285 A.2d 807, 809 (Del.1971)); *see generally* 73 AM. JUR. 2D *Statutes* § 170 (2004).

**4.** 2000 WL 286722, at * 5–*10 (Del.Ch. Mar. 8, 2000), *aff'd in relevant part, rev'd in part,* 809 A.2d 555 (Del.2002).

**5.** 240 A.2d 577 (Del.1968).

**6.** *Cochran v. Stifel Financial Corp.,* 2000 WL 286722, at *6 (quoting *Goldman,* 240 A.2d at 578).

for a lost job or for work performed but for which he has not been compensated: Executive has *not* lost his job and is being compensated for the work that he performs.

Instead, Executive is seeking compensation for an intangible loss that he *arguably* incurred when Little Switzerland came under control of Tiffany. That intangible loss may or may not be real, but it is difficult, if not impossible, to value, and the only basis available to find that value is in the language of the contract [i.e., the Change In Control provision].[7]

This is a "gotcha" argument that lacks force upon close examination.[8] In the memorandum, Dorsey is attempting to justify Little Switzerland's interpretation of the employment agreement by virtue of its purpose. For purposes of § 8111, however, it is not relevant why Hopper was accorded the right to receive the Change In Control Bonus. The purpose of such a Bonus is relatively obvious, which is to provide an incentive for a key employee to stay in the face of a possible Change In Control, with all the uncertainty and possible harm (both tangible and intangible) such an event can have on a key employee's professional expectations. What is rel-

evant under *Goldman* is not the subjective reasons why the parties agreed to pay Hopper a Change In Control Bonus ninety days after a Change In Control, but the fact that by virtue of the unambiguous terms of the employment agreement, Hopper became entitled to that Bonus because he had stayed on the job until the Change In Control occurred.[9] Neither the obligation of Little Switzerland to pay the Change In Control Bonus nor the size of that Bonus was contingent on any efforts by Hopper after the Change In Control. In these circumstances, Goldman and its progeny teach that § 8111 applies.

Continuing to resist this conclusion, Hopper clings to the Supreme Court's decision in *Stifel Financial Corp. v. Cochran*[10] and argues that *Cochran* supports the application of § 8106 here. In its decision in *Cochran*, the Supreme Court affirmed this court's holding that § 8106, rather than § 8111, applied to a claim for indemnification under a corporate certificate of incorporation. Notably, the Supreme Court's decision echoed a prior decision of this court in *Scharf v. Edgcomb Corp.*[11] In *Scharf*, then Vice Chancellor, now Chief Justice Steele, held that a director's right to indemnification was not purely, or even primarily, personal or con-

---

**7.** Donaldson Aff. Ex. A at 2 (emphasis in original).

**8.** At oral argument, Little Switzerland's counsel made a new and good point. Because Dorsey is counsel for Tiffany, which acquired Little Switzerland *after* the Change In Control Bonus provision was negotiated, Dorsey's memorandum is not contemporaneous evidence of the contract's meaning, but an after-the-fact gloss. Hopper responds by arguing that Dorsey's memorandum is an adopted admission of Little Switzerland's view of the meaning of the contract. Because I conclude that nothing in the substance of the memorandum aids Hopper, I need not address the interpretive weight to be given by post hoc views about a contract by a person who played no role in negotiating that agreement.

**9.** *See Mitchell v. E.I. DuPont DeNemours & Co.*, 310 A.2d 641, 642 (Del.1973) (when "the only eligibility requirement for participation in [a wage benefit plan which provided benefits to an employee in the event of disability] was at least one year of continuous service with the employer ..." then the plan was "a 'fringe benefit' which accrued to the employee by reason of tenure for a period of one year. As such, it conferred 'benefits arising from ... work, labor or personal services performed' within the language of § 8110 [the former provision embodying the content of § 8111].").

**10.** 809 A.2d 555 (Del.2002).

**11.** 1997 WL 762656 (Del.Ch. Dec. 4, 1997).

tractual in nature, but instead fulfilled broader purposes under our corporate law that, by creating an incentive for persons of high quality and integrity to serve as directors, benefited all the constituencies of our corporate law.[12] Therefore, he concluded that § 8106, which addresses not only claims for breach of contract, but also claims "based on a statute," should govern claims for indemnification made by corporate officers and directors rather than § 8111. In *Cochran*, this court also held that § 8106 governed, largely in deference to the precedent set in *Scharf*, the policy-specific reasoning set forth in that opinion, and the reasonable expectations that directors and officers harbored about the appropriate limitations period as a result of that decision.

On appeal in *Cochran*, the Supreme Court affirmed the applicability of § 8106 to indemnification claims. In so doing, however, the Supreme Court did not overturn the *Goldman* test. Rather, as in *Scharf*, the Court made clear that its decision was grounded in the unique nature and importance of the indemnification right for corporate directors, a right that grew as much out of 8 *Del. C.* § 145 as it did out of any specific contract. Thus, the court, held "that, because indemnification is a right conferred by contract, under statutory auspice, actions seeking indemnification are subject to the three year limitations period that encompasses both actions based on a promise' and those based on a statute.' "[13] In so ruling, the Court expressly left "the *Goldman* dichotomy intact for all claims seeking wages, salary, overtime, or other true 'benefits' arising from the employment relationship."[14]

In my view, *Cochran* must be read as a case dealing with a unique area of employment relationships that is grounded in, and shaped by, statute, and not as a wide exception to *Goldman*. Here, Hopper's right to a Change In Control Bonus is entirely attributable to his having performed work for Little Switzerland until the moment the Change In Control occurred. His rights do not flow out of any specific provision of our corporate law and the vindication of his interests cannot be said to serve any larger purpose than is usually, albeit importantly, served by the judicial enforcement of private contracts.

Indeed, a determination that Hopper's claim is governed by § 8106 would, in my view, signal the judicial elimination of the language in § 8111 clearly addressing claims for "other benefits" arising from "work performed." If, as Hopper claims, § 8106 always applies because the line between § 8106 and § 8111 can never be clearly discerned, a statute has been, by judicial interpretation, repealed.

Although the *Goldman* test is by no means ideal,[15] it provides a certain basis to

---

12. *See Scharf*, 1997 WL 762656, at *4 ("Scharf's right to indemnification is based on the provisions in the Agreement and Plan of Merger, Edgcomb's by-laws and Delaware statutory law. This contractual right is not a personal benefit payable as a result of his individual effort as a director. Delaware's corporation code authorizes liberal indemnification provisions for officers and directors of its corporations for sound policy reasons that benefit all of a corporation's constituencies.... More simply put, director and officer indemnification benefits the corporation more than the director or the officer covered. A three year statute should apply in order to recognize the weighted exchange appropriately.").

13. 809 A.2d at 559.

14. *Id.*

15. Arguably, *Goldman* is based on an over-strained emphasis on the past tense used in § 8111. A very strong argument can be made that any claim for benefits for work already or to be performed is sensibly covered by § 8111, and as the more specific statute, that § 8111 should trump § 8106 as to claims arising out of employment contracts. This, in

resolve this case and Hopper's request to ignore its applicability is not one within the power of this court to grant. Moreover, even if this court were free to ignore *Goldman,* there is no justification for moving in the direction that seems most inimical to the General Assembly's obvious intent. No convincing reason exists to hold that § 8111, the more specific statute and the one whose plain language is more clearly implicated by Hopper's claim, should give way to § 8106, the more general statute that less specifically addresses his claim. Respect for the General Assembly would seem to require application of § 8111's preference for a tighter limitations period for employment-related

claims, in the absence, as was present in *Cochran* and *Scharf,* of countervailing policy considerations expressed by the General Assembly itself.

### III. *Conclusion*

For all these reasons, I conclude that Hopper's claim is subject to the one year limitations period set forth in § 8111, that his motion to dismiss must be denied, and that Little Switzerland is entitled to judgment permanently enjoining Hopper's claim. IT IS SO ORDERED. Each side shall bear its own costs.

---

my view, is the more logical, if long-ago rejected, approach. In this regard, it is worth noting that *Goldman* creates the potential for the different limitations period to govern claims for breach of the same employment agreement: § 8111 as to any claims relating

to benefits for services already performed under the agreement and § 8106 as to withheld benefits relating to future services contemplated by the agreement.