Neel, Stephen E., J.
The defendant, Raytheon Company (“Raytheon”) moves for partial summary judgment on Counts I, II, III, and IV of the First Amended Complaint (“complaint”) of plaintiff John P. Nahill (“Nahill”). The Court has determined in a separate order that neither party is entitled to summary judgment on Count I because disputed material facts exist related to the circumstances of Nahill’s departure from Raytheon. In Count II, Nahill asserts that Raytheon breached Nahill’s employment contract when Ray-theon canceled Nahill’s restricted stock award of5,000 shares of Raytheon common stock. In Count III, Nahill alleges that by cancelling a previously vested stock award, Raytheon committed conversion. In Count IV, Nahill alleges that Raytheon’s behavior amounted to a breach of the covenant of good faith and fair dealing.
For the following reasons, Raytheon’s Motion will be allowed as to Count II, denied as to Count III, *418 allowed as to Count IV to the extent that count relies on the contract in Count II, and otherwise denied as to Count IV.
BACKGROUND
The undisputed material facts, viewed in the light most favorable to Nahill, are as follows. Pursuant to letters dated January 25, 1999 and February 3, 1999, Raytheon and Nahill entered into an employment arrangement for Nahill to serve as Raytheon’s Vice President for Financial Planning & Analysis. By virtue of his position with the company, Nahill became eligible to receive a restricted stock award from Raytheon. Raytheon is incorporated under the laws of the state of Delaware.
On June 26, 2002, Raytheon and Nahill entered into a Restricted Stock Grant Agreement (“RSGA”), pursuant to the Raytheon 2001 Stock Plan (“2001 Stock Plan”), whereby Raytheon granted to Nahill an award of 5,000 restricted shares of Raytheon common stock. Nahill’s interest in the shares would vest free of restrictions on June 26, 2003, provided that Nahill had been “continuously employed” by Raytheon during the Vesting Period (June 26, 2002 through June 26, 2003) and provided that Nahill complied with certain performance-based goals. The goals required Nahill to “secure Boeing floor plan financing; close on private equity; and recover Raytheon’s interim financing.” RSGA, ¶2.
According to the 2001 Stock Plan, which is expressly incorporated in the RSGA, if Nahill or Ray-theon failed “to achieve the designated goals or [Nahill] incurs a Termination of Service prior to the expiration of the Vesting Period, [Nahill] shall forfeit all shares of Stock or cash subject to the Award which have not vested as of such date.” 2001 Stock Plan, §11.2. The 2001 Stock Plan also contains a governing law provision whereby “[t]he provisions of this Plan shall be governed by, construed and administered in accordance with applicable federal law; provided, however, that to the extent not in conflict with federal law, this Plan shall be governed by, construed and administered under the laws of the State of Delaware, other than its laws respecting choice of law.” 2001 Stock Plan, §15.6.
During the Vesting Period, Raytheon tried to persuade Nahill to take an executive position with Flight Options, LLC (“Flight Options”), located in Cleveland, Ohio. Flight Options was formed in March 2002 as a joint venture between Raytheon Travel Air (“RTA”), a subsidiary of Raytheon, and Flight Options, Inc. By June 2003, RTA had obtained a 65% ownership interest in Flight Options through various restructuring and recapitalization transactions. Initially, Nahill became an RTA-appointed member of the Flight Options Board of Managers. Soon after joining the Board, Dan Burnham, then-CEO of Raytheon Company, offered Nahill the position of Chief Operating Officer at Flight Options. Nahill rejected this offer, in part because Nahill did not want to report to Kenneth Ricci, then-CEO of Flight Options. When Ricci was terminated, Nahill was offered the position of Chairman of the Board and CEO of Flight Options. Nahill accepted the offer, and in February 2003 became the CEO of Flight Options.
From this point forward, Nahill was an executive caught between two companies. In September 2003, while negotiations related to Nahifl’s compensation package with Flight Options were ongoing, Raytheon notified Nahill of its intent to transfer Nahill from its payroll to the Flight Options payroll.[1] Concerned about the impact of such a decision on his compensation with Raytheon, Nahill allegedly sought assurances from Raytheon that his interest in the 5,000 restricted shares of Raytheon common stock remained in place despite his move to Flight Options.[2]
The parties dispute whether Nahill achieved the performance goals within the Vesting Period in order to receive the 5,000 Raytheon shares free of restrictions. Raytheon claims that Nahill did not. Nahill counters that the shares vested free of restrictions on June 26, 2003 as evidenced by (1) alleged oral and written assurances from Raytheon and Flight Options’s Director of Human Resources, Robert Sullivan; (2) an email between Marguerite Schelling (an employee in the Executive Compensation Department of Raytheon Company) and Keith Peden (also from Raytheon) dated September 17, 2003 in which Schelling asks Peden whether Schelling should “cancel John’s 5,000 shares of performance based restricted stock” and Peden responds that, “[n]o, all his equity stays in place”; and (3) Nahill’s Stock Option Status Report dated September 16, 2003 in which the 5,000 shares are listed as “current” in the “Options Vested” column.
The current dispute arose, in part, out of Raytheon’s determination to cancel Nahill’s shares. On June 14, 2004, Schelling canceled Nahifl’s restricted shares, purportedly because Nahill had not met performance goals. Nahill filed this action on September 15, 2006.
DISCUSSION
I. Summary Judgment
A court grants summary judgment where there are no genuine issues as to any material fact and where the moving party is entitled to summary judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
II. Statute of Limitations
Raytheon’s primary argument in support of its motion for partial summary judgment is that the *419 one-year statute of limitations contained in 10 Del. C. §8111 bars Nahill’s claims in Counts II, III, and IV, as they relate to the cancellation of his interest in the 5,000 shares of restricted stock. Raytheon argues that those claims are barred by §8111 because the shares are benefits stemming from “work, labor or personal services.” 10 Del. C. §8111.[3] Nahill counters that the claims are subject to either the three-year statute of limitations contained in 10 Del. C. §8106,[4] the six-year statute of limitations contained in G.L.c. 260, §2, or the three-year statute of limitations contained in G.L.c. 260, §2A, because the shares had vested at the time of cancellation.
The parties dispute the date upon which Nahill’s claims, as they are based on the restricted stock award, accrued. Raytheon argues that Nahill’s claims accrued on June 26, 2003, the date upon which the shares were to vest, provided that the conditions had been met. Nahill argues that his claims accrued on June 14, 2004, the date upon which Raytheon can-celled his interest in the shares. For purposes of the statute of limitations analysis, the Court concludes that Nahill’s claims accrued on June 14, 2004 (the date both of any breach of contract, and of any conversion of the shares). See Nardo v. Guido DeAscanis & Sons, Inc., 254 A.2d 254, 256 (Del.Super.Ct. 1969) (citing traditional rules that cause of action for breach of contract accrues at time of breach and cause of action in tort accrues at time of injury). Prior to June 14, 2004, Nahill had no reason to suspect that there was any problem with his 5,000 shares of common stock. Indeed, he has documented at least two occasions indicating that Raytheon believed his shares to be “current” and that Nahill’s equity was to remain “in place” despite his move to Flight Options.
The shortest statute of limitations that may apply to Nahill’s claims is the one-year limitations period found in 10 Del. C. §8111. If the Court were to determine that §8111 applies to any of Nahill’s claims, such claims would be time-barred because he filed the complaint on September 15, 2006, fifteen months after the claims accrued on June 14, 2004. Were the Court to determine 10 Del. C. §8111 inapplicable, and instead apply 10 Del. C. §8106, G.L.c. 260, §2, or G.L.c. 260, §2A, then Nahill’s claims would be timely.
A. Choice of Law — Massachusetts or Delaware
According to the 2001 Stock Plan and the RSGA, “[t]he provisions of this Plan shall be governed by, construed and administered in accordance with applicable federal law; provided, however, that to the extent not in conflict with federal law, this Plan shall be governed by, construed and administered under the laws of the State of Delaware, other than its laws respecting choice of law.” 2001 Stock Plan, §15.6. Thus, it is left to the Court to decide whether to apply the statute of limitations of Massachusetts or of Delaware.
Where, as here, the case involves a contractual governing-law provision, the Court looks to the analysis utilized in Newburyport Five Cent Savings Bank v. MacDonald, 48 Mass.App.Ct. 904 (1999) (upholding trial court’s decision to apply New Hampshire rather than Massachusetts statute of limitations).[5] In MacDonald, the Appeals Court affirmed the trial court’s analysis of the relevance of the intent of the parties as evidenced by a governing law provision in the contract at issue. MacDonald, 48 Mass.App.Ct. at 906. The court recognized the “right of the parties to a transaction to select the law governing their relationship.” Id., quoting Morris v. Watsco, Inc., 385 Mass. 672, 674 (1982). The court explained that the “certainly of the traditional answer as to which statute of limitations to apply does not justify a refusal to apply the statute of limitations of another jurisdiction in particular circumstances.” MacDonald, 48 Mass.App.Ct. at 906, quoting Gourdeau, 419 Mass. at 664. See also Restatement (Second) of Conflict of Laws, §187 (Comment f) (Supp. 1988) (“When the state of the chosen law has some substantial relationship to the parties or the contract, the parties will be held to have had a reasonable basis for their choice. This will be the case, for example, when this state is that where . . . one of the parties is domiciled or has [its] principal place of business”).
Nahill’s urging that the Court adopt the analysis of Gourdeau notwithstanding, “[w]here the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties’ choice as long as the result is not contrary to public policy and as long as the designated State has some substantial relation to the contract.” Steranko v. Inforex, Inc., 5 Mass.App.Ct. 253, 260 (1977) (citations omitted).
Here, applying Delaware’s statutes of limitations to Nahill’s claims arising out of the cancellation of his 5,000 shares is not contrary to Massachusetts public policy, especially in light of the express terms of the governing law provision contained in the 2001 Stock Plan and the RSGA, and Raytheon’s incorporation under the laws of Delaware, both of which give that forum “some substantial relation to the contract.” Thus, Delaware’s statutes of limitations govern.
B. Count II — Breach of Contract
Count II, which seeks recovery of stock awarded under the 2001 Stock Plan and RSGA, is a claim for “benefits arising from . . . work . . . performed,” and so comes within the language of Delaware’s one-year statute, §8111. At the same time, the claim — breach of contract — also falls within the three-year statute, §8106, insofar as it alleges a breach of a “promise.”
Raytheon cites decisions in which the Delaware courts have applied the one-year statute of limitations to claims for employment-related benefits. None of the cases cited relate specifically to restricted stock awards. See, e.g., Mitchell v. E.I. DuPont DeNemours & Co., 310 A.2d 641 (Del. 1973) (benefits under a dis *420 ability wage plan); Little Switzerland, Inc. v. Hopper, 867 A.2d 955 (Del.Ch. 2005) (proper amount of “change in control” payment); Syed v. Hercules, Inc., 214 F.3d 155 (3d Cir. 2000) (benefit claim under ERISA); Compass v. American Mirrex Corp., 72 F.Sup.2d 462 (D.Del. 1999) (“enterprise appreciation bonus”); McIntosh v. Arabian American Oil Co., 633 F.Sup. 942 (D.Del 1986) (reimbursement of educational expenses).
Delaware courts have applied the three-year statute of limitations in actions arising out of other elements of the employer-employee relationship. See, e.g., Goldman v. Braunstein’s, Inc., 240 A.2d 577 (Del. 1968) (wrongful discharge); Stifel Financial Corp. v. Cochran, 809 A.2d 555 (Del. 2002) (indemnification); Rich v. Zeneca, Inc., 845 F.Sup. 162, 166 (D.Del. 1994) (wrongful discharge).
Where a claim appears to straddle both §8111 and §8106, the Delaware Supreme Court, in Goldman v. Braunstein’s, Inc., supra, has “set forth a temporal test for determining whether §8111 or §8106 applies to a claim.” Little Switzerland, Inc. v. Hopper, supra, 867 A.2d at 959. The standard under Goldman in such cases has been explained as follows:
The one-year statute applies to claims based on work or services that have been completed, even though the work may have originally been undertaken on the strength of a promise. Since the services have been completed, the action is based upon the service performed rather than on the original promise. The three-year statute applies to claims based on work or services not yet completed as to which a promise has been made. Since the work remains uncompleted, an action with respect to such work is necessarily based upon the underlying promise.
Brown v. Colonial Chevrolet Co., 249 A.2d 439, 441 (Del.Super. 1968). “Where a plaintiffs claims arise from services ‘which have been performed,’ then the one year period in §8111 applies. In contrast, where a plaintiffs claims arise ‘upon or after termination of the employer-employee relationship,’ then §8111 is inapplicable and §8106 applies.” Little Switzerland, Inc., 867 A.2d at 959, citing Goldman v. Braunstein's, Inc., 240 A.2d 577 (Del. 1968). In other words, §8111 “applies to claims for breach of a promise to pay something already earned,” and §8106 “applies to claims for breach of a promise to pay what would have been earned had employment continued.” Syed v. Hercules, Inc., 214 F.3d 155, 160 (3d Cir. 2000), citing Rich v. Zeneca, Inc., 845 F.Sup. 162 (D.Del. 1994).
Here, Nahill’s right to the value of the 5,000 restricted shares is entirely attributable to his having performed work for Raytheon during the Vesting Period (June 26, 2002 through June 26, 2003). Whether or not Nahill had, by June 26, 2003, satisfied the conditions necessary to vesting of the award, the critical, and undisputed, fact (in light of the temporal guidance from Goldman and Brown) is that no future work (i.e., beyond June 26, 2003) was contemplated.[6] Thus, §8111 bars Nahill’s breach of contract claim against Raytheon with respect to the cancellation of his 5,000 shares of Raytheon common stock.
C. Count III — Conversion
While the one-year statute of limitations under §8111 bars Nahill’s contractual claims, it does not apply to Nahill’s tort claim of conversion. Whether that claim is covered by the three-year Delaware statute, §8106 (applying to actions “to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant. . .”), or G.L.c. 260, §2A (“actions of tort. . . and actions of replevin”), the claim is timely.
Nor is Raytheon entitled to summary judgment based on the substance of the claim. In Delaware (as in Massachusetts), “conversion is an act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it.” Arnold v. Society for Sav. Bancorp, Inc., 678 A.2d 533, 536 (Del.Supr. 1996) (quotations and citations omitted). Here, there is a genuine issue of material fact as to whether the shares were unrestricted under the terms of the contract, and therefore were properly of Nahill converted by Raytheon.
D. Count IV — Breach of Implied Covenant of Good Faith and Fair Dealing
To the extent that Nahill’s claim in Count IV is based on the breach of contract alleged in Count II, the claim is similarly time-barred. Otherwise, on the summary judgment record supporting Nahill’s remaining allegations in support of Count IV, genuine issues of material fact remain. Accordingly, to that extent the claim survives summary judgment.
ORDER
For the foregoing reasons, Raytheon’s Motion for Partial Summary Judgment is ALLOWED with respect to Counts II and IV (to the extent Count IV is based on the breach of contract alleged in Count II); is DENIED with respect to Count III; and is otherwise DENIED with respect to Count IV.

As noted above, the parties’ dispute over the effect of Nahill’s acceptance of the CEO position at Flight Options on his position with Raytheon is the subject of Count I, as to which the Court has denied summary judgment in a separate order.

After months of negotiation, in January 2004, Nahill and Flight Options finally executed a written Employment Agreement. Not long after consummating the employment agreement, however, the relationship between Nahill and the Flight Options Board soured. During 2004, the Board grew concerned with Nahill’s performance as CEO, and on or about November 1, 2004, the Board voted to terminate Nahill without cause. Pursuant to the Employment Agreement between Flight Options and Nahill, Flight Options paid Nahill severance in the aggregate amount of $800,000.

“No action for recovery upon a claim for wages, salary, or overtime for work, labor or personal services performed, or for damages (actual, compensatory or punitive, liquidated or *421 otherwise), or for interest or penalties resulting from the failure to pay any such claim, or for any other benefits arising from such work, labor or personal services performed or in connection with any such action, shall be brought after the expiration of one year from the accruing of the cause of action on which such action is brought.” 10 Del. C. §8111.

“No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§8108-8110, 8119, and 8127 of this title.” 10 Del. C. §8106.

Where there is no contractual governing-law provision, the Supreme Judicial Court has adopted a “functional approach,” in which a court’s “focus should on which State has the most significant relationship to the occurrence and to the parties with respect to the issue of limitations.” New England Tel. Co. v. Gourdeau Construction Co., 419 Mass. 658, 661 (1995). The Gourdeau court also clarified that Massachusetts courts must look to the Restatement (Second) of Conflict of Laws, §142 (Supp. 1988), which provides that:
In general, unless exceptional circumstances of the case makes such a result unreasonable:
(1) The forum will apply its own statute of limitations barring the claim.
(2) The forum will apply its own statute of limitations permitting the claim unless:
(a) maintenance of the claim would serve no substantial interest of the forum; and
(b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.
Under this “functional approach,” the six-year limitations period of G.L.c. 260, §2 would likely apply to Nahill’s contract-based claims, because those claims concern a contract (the 2001 Stock Plan/RSGA) that was executed and allegedly breached in Massachusetts.

Little Switzerland, Inc. v. Hopper, supra which involved a scenario similar to Nahill’s, is instructive. Hopper, the departed employee, waited eighteen months to seek arbitration of the amount due under a provision under his employment agreement promising him a payment in the event of a change in control of the company. The court ruled that, under Goldman, the temporal test cut in favor of the one-year statute:
By operation of the plain language of his employment agreement as amended, Hopper became entitled to a Change In Control Bonus by being employed on the date of the Change In Control. That is, by virtue of his having hung in there and remained at Little Switzerland until a Change In Control, Hopper did everything necessary to earn his Change In Control Bonus. Said another way, as a result of services “which have been performed,” Hopper earned his Change In Control Bonus. Therefore, under Goldman, §8111 governs his claim.
Id. at 959. Nahill similarly argues that he had done everything necessary to earn unrestricted shares under the 2001 Stock Plan and RSGA.