# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOSEPH J. PEDICONE, III and )
HILMA L. PEDICONE, H/W, )
)
Plaintiff, )
)
v. ) C.A. No. N17C-11-264 WCC
)
THOMPSON/CENTER ARMS )
COMPANY, LLC F/K/A )
THOMPSON/CENTER ARMS )
COMPANY, INC., and )
SMITH & WESSON CORP., )

Defendants.


Submitted: July 7, 2022
Decided: November 4, 2022

**Plaintiffs' Motion for a New Trial – DENIED**

## MEMORANDUM OPINION

Joseph J. Rhoades, Esquire and Stephen T. Morrow, Esquire, Rhoades & Morrow LLC, 1225 North King Street, Suite 1200, Wilmington, Delaware 19801. Michael A. Trunk, Esquire, and Thomas E. Bosworth, Esquire, KLINE & SPECTOR, P.C., 1525 Locust Street, Philadelphia, PA 19102. Attorneys for Plaintiffs.

Timothy Jay Houseal, Esquire and Jennifer M. Kinkus, Esquire, YOUNG CONAWAY STARGATT & TAYLOR, LLP, 1000 North King Street, Wilmington, DE 19801. Anthony M. Pisciotti, Esquire and Danny C. Lallis, Esquire, PISCIOTTI LALLIS ERDREICH, 30 Columbia Turnpike, Suite 205, Florham Park, New Jersey 07932. Attorneys for Defendants.


**CARPENTER, J.**

Before the Court is Plaintiffs' Motion for a New Trial. For the reasons set forth in this Opinion, Plaintiffs' Motion is **DENIED**.

## I. Factual & Procedural Background

On or about January 9, 2016, Mr. Pedicone was injured while operating his Thompson/Center Contender pistol ("Contender"). The pistol discharged into his leg, resulting in serious injury and amputation.[1] On November 29, 2017, Mr. and Mrs. Pedicone, ("Plaintiffs") filed suit against Thompson/Center Arms Co. and Smith and Wesson Co. ("Defendants") alleging that Defendants negligently designed the Contender.[2] The Court held a jury trial from March 21, 2022, until March 29, 2022.[3] The jury returned a verdict on March 30, 2022, finding that the Defendants were not negligent with respect to the design of the Contender.[4] On April 13, 2022, Plaintiffs submitted a Rule 59 Motion for a New Trial.[5]

## II. Standard of Review

Pursuant to Delaware Superior Court Civil Rule 59, a new trial may be granted for all, or part of the issues decided at trial.[6] In considering a motion for a new trial, the Court should give the jury's verdict "enormous deference,"[7] and "should not set

---

[1] Compl. ¶¶ 18, 23.
[2] *Id*. ¶ 26.
[3] Trial Worksheet, D.I. 283, at 1 (Mar. 30, 2022).
[4] Verdict Sheet, D.I. 282, at 1 (Mar. 30, 2022).
[5] Pls.' Mot. for a New Trial, D.I. 285 (April 13, 2022). ("Pls.' Mot.")
[6] Del. Super. Ct. R. 59.
[7] *Cuonzo v. Shore*, 958 A.2d 840, 844 (Del. 2008).

aside a verdict … unless, on review of all the evidence, [it] preponderates so heavily against the jury verdict that a reasonable jury could not have reached the result."[8]

A verdict should not be disrupted unless it is "manifestly and palpably against the weight of the evidence,"[9] the jury disregarded rules of applicable law, or the verdict was "tainted by legal error during trial."[10]

## III. Discussion

In support of their argument for a new trial, the Plaintiffs claim that the Court: (1) excluded evidence of an alternative feasible design;[11] (2) improperly questioned an expert witness;[12] (3) improperly instructed the jury;[13] and (4) failed to discharge Juror No. 9, who was represented by the Defendants' law firm in a different matter.[14] Before addressing the arguments made by Plaintiffs, a couple of general comments are in order. This was a terrible and tragic accident that caused significant injury to Mr. Pedicone. While it is clear that Mr. Pedicone is not seeking sympathy, the Court is sure it was difficult for everyone in the courtroom to totally appreciate the effect this incident has had on his life. Perhaps even more amazing is how Mr. Pedicone

---

[8] *Storey v. Camper*, 401 A.2d 458, 465 (Del. 1979); *see also Town of Cheswold v. Vann*, 9 A.3d 467, 472 (Del. 2010).
[9] *McCloskey v. McKelvey*, 174 A.2d 691, 693 (Del. Super. 1961).
[10] *In re Asbestos Litig. 112010JR Trial Grp.*, 2011 WL 684164, at *4 (Del. Super. Feb. 2, 2011).
[11] Pls.' Mot. ¶ 5.
[12] *Id.* ¶ 6.
[13] *Id.* ¶ 7.
[14] *Id.* ¶ 8.

has not let this incident hamper his joy for living, including continuing to hunt, a sport he clearly loves. The Court applauds his determination and tenacity.

That said, this is a case that the Court is confident all counsel knew would be difficult to prove. Even in the best of circumstances it would be difficult for a jury to discount the clear negligence of Mr. Pedicone, even if they contributed some liability to the gun manufacturer. The facts of this case simply would make any other conclusion difficult. The Court appreciates that Mr. Pedicone has not obtained the results desired, but the results should not have been a surprise or unexpected. The Court will now consider the arguments asserted in Plaintiffs' Motion for a New Trial.

A. Alternative Feasible Design

First, Plaintiffs contend the Court improperly excluded evidence of the Thompson/Center G2 firearm (G2) which was manufactured by Defendants nearly 35 years after the Contender weapon which is the subject of this litigation. Plaintiffs argue they should have been allowed to introduce evidence regarding the operation of the G2 firearm as it would have demonstrated that an alternative design was available, and that design would have made the Contender weapon safer.[15] In the Court's pretrial ruling, it stated:

> "The fact that a subsequently produced weapon with more modern and up-to-date features has been manufactured by Defendants does not

---

[15] Pls.' Mot. ¶ 5.

equate to the initial weapon being defectively designed. Further, the marketing of the new weapon as the next generation of the Contender does not provide a basis for its introduction. Therefore, the Court rules that the introduction of the weapon simply to establish Defendants have corrected concerns of the original Contender is not admissible. It is possible that the fact that a new firearm similar to the Contender has been produced may be utilized on cross-examination to attack knowledge or credibility, but those decisions will have to wait for trial."[16]

The Court finds this ruling to be correct. First, despite Plaintiffs' counsels' assertions otherwise, Dr. Knox was given significant latitude over days to testify about the operation of the Contender weapon, what would have caused the weapon to unintentionally discharge and why it occurred in this case. Dr. Knox was never prevented from offering testimony about designs that were available and utilized when Mr. Pedicone's gun was manufactured in the 1970s. The Court's ruling simply prevented Plaintiffs from asserting that because Defendants later manufactured a weapon that corrected the concerns raised by Dr. Knox, he should have been allowed to testify about these advances which he was asserting could have been considered decades before. Despite the obvious advancements in technology and the knowledge gained from decades of manufacturing weapons, a weapon manufactured in the 70s is not defectively designed because decades later a new design is implemented in a more modern firearm. The Court is sure that significant changes have occurred in manufacturing weapons over the two hundred years of our country's history which

---

[16] Letter Op. from Carpenter, J., D.I. 261, at 10 (Mar. 7, 2022).

would have made an older weapon safer. That alone, however, does not make the older weapon defective, and allowing the testimony suggested by Plaintiffs would have confused the jury and allowed an unfounded assertion to be introduced into the trial issues. The Court finds the testimony as suggested by Plaintiffs irrelevant and it would have been inappropriate to allow it into evidence.

It is also clear to the Court that if properly handled, the Contender firearm would have been safe to use. Unfortunately, Mr. Pedicone failed to exercise reasonable care in the handling of this older firearm which led to this accident. This is particularly true in this case as the weapon was purchased at a gun show from a friend, the gun had been altered by its previous owners and Mr. Pedicone, and those modifications to the weapon made it more difficult and less safe to use. Here the jury was given significant evidence by both parties' experts concerning the manufacturing of this weapon. The jury's decision to find the weapon was not defectively manufactured is clearly supported by the evidence. As such, the Motion for New Trial on this ground is denied.

B. Court's Questions

Next, Plaintiffs claim the Court improperly questioned Dr. Michael Knox during Plaintiffs' direct examination.[17] The Court's questioning occurred while Plaintiffs' counsel was examining Dr. Knox on the procedural steps necessary to

---

[17] Pls.' Mot. ¶ 6.

disengage the weapon once it was set to fire.[18] The Court asked Dr. Knox whether the engagement of the safety was the first step indicated in the weapon's manual. Plaintiffs argue that the Court's mid-examination questions impaired Dr. Knox's credibility and derailed Plaintiffs' line of questioning.[19]

In response, Defendants assert that the Court's comments were proper and were simply clarifying questions – a practice employed by the Court for witnesses of both parties.[20] Further, Defendants argue that the Court maintained neutrality when asking clarifying questions and kept questioning to a minimum throughout the trial.[21] Defendants argue that Plaintiffs failed to object to the Court's questioning and that there is no evidence that the Court's question regarding the manual safety demonstrated a lack of impartiality or prejudice.[22]

It is well settled under Delaware law that a trial judge is permitted to interrupt a line of questioning on direct or cross examination of a witness to ask clarification questions.[23] When doing so, a trial judge must exercise self-restraint and "preserve an atmosphere of impartiality when questioning witnesses."[24]

---

[18] *Id.*
[19] Pls.' Mot. ¶ 6.
[20] Defs.' Mot. at 5, 6.
[21] *Id.* at 7.
[22] *Id.* at 8–9.
[23] *Price v. Blood Bank of Delaware, Inc.*, 790 A.2d 1203, 1212 (Del. 2002).
[24] *Lagola v. Thomas*, 867 A.2d 961, 898 (Del. 2005).

Here, the Plaintiffs' expert, Dr. Knox, was testifying what was set forth in the weapon's manual as to the proper operating steps and what happens when the user decides not to fire the Contender after the hammer block is engaged.[25]

> COUNSEL: Doctor, the entire process we just described there, what is happening with the gun during that process when you release the -- well, as it starts out. If you decide not to fire after the hammer has been cocked, then it takes you through this step, what is the process that's actually happening with this gun that's being described?

> THE WITNESS: So what happens is that we have a hammer cock and you decide to release the hammer because you are not going to fire it, so you would hold the hammer with your thumb, pull the trigger to release the hammer from the sear. And then what this is describing is let the hammer down slowly. What has happened, when you do that, is once you pull the trigger to release the hammer, you also disengage the hammer block, so the hammer block is no longer in place, so if you were to let the hammer fall from that position with the -- without the safety pin engaged, then the hammer would strike the firing pins.[26]

Then, the Court briefly asked the witness about the gun's manual safety, by questioning:

> THE COURT: Talking about the amount of initial construction[27] here, which is put the gun on -- in a safe position; right? So you kind of jumped to the second one; right?

> THE WITNESS: I think -- yes. What this describes, I'm describing what happens in the gun in terms of the steps.

> THE COURT: Right. But both the gun that Mr. Pedicone owns and this manual reflect there's a safety; right?

---

[25] Trial Tr. Mar. 22, 2022, at 54–58.
[26] *Id*. at 57–58.
[27] The Court believes that the reporter misheard the Court's question and the word "construction" should be "instruction".

THE WITNESS: Yes.

THE COURT: Regardless of whether it's an S or some other, as you described there is a safety on it. That indicates first you put that on; right?

THE WITNESS: That's what is indicated. Yes.

THE COURT: Okay.[28]

The instruction manual clearly states that the first step the gun operator should take after deciding not to fire the gun after it had been cocked, is to put the manual safety on. After being questioned for several minutes about the instructions in the manual, Dr. Knox failed to include this first step in the disengagement steps he was testifying about. The Court's questions were only intended to clarify that the engagement of the safety was the initial act indicated in the manual and was consistent with Dr. Knox's expertise on the operation of the firearm. Since the Court had not heard Dr. Knox include this step in his response to counsel's question, it was a proper inquiry to clarify the issue and avoid confusion.

The Court's questions were permissible clarifications regarding the significant complexities in the operation of this weapon and the steps taken to use the firearm according to its manual. The Court's questions were asked in a neutral and impartial manner, free from any suggestion that the Court favored one side over

---

[28] *Id*. at 58.

another. Accordingly, the Court's brief questions to Plaintiffs' expert witness were proper and free from any influential suggestions.

C. <u>Jury Instructions</u>

Third, Plaintiffs assert the Court "adopted the Defendants' factual narrative when instructing the jury" by emphasizing the contentions of the Defendants relating to the claim that Mr. Pedicone was negligent.[29] Plaintiffs contend that the emphasis on Mr. Pedicone's contributory negligence in the jury instructions improperly misled the jury and bolstered the Defendants' theories.[30]

Defendants on the other hand, assert the jury instructions given by the Court were appropriate, fair, and impartial.[31] Defendants contend that the jury instructions combined both the Plaintiffs' and Defendants' proposed instructions, including Plaintiffs' requested instructions about reckless conduct.[32] Defendants explain, however, the jury found that the firearm was not negligently designed.[33] Therefore, the contentions of the Defendants regarding the conduct of Mr. Pedicone were never considered by the jury as the issue of comparative negligence was rendered moot by

---

[29] Pls.' Mot. at ¶ 7.
[30] *Id.*
[31] Defs.' Mot. at 9–10.
[32] *Id.* at 11.
[33] Verdict Sheet, D.I. 282, 1 (Mar. 30, 2022).

their decision.[34]  As such, Defendants maintain that the jury instructions were not prejudicial and did not bolster the defense's argument.[35]

In reviewing a motion for new trial based on a jury instruction, the Court must determine whether "the alleged deficiency in the jury instructions undermined the jury's ability to intelligently perform its duty in returning a verdict."[36]  "Generally, jury instructions must give a correct statement of the substance of the law and 'must be reasonably informative and not misleading.'"[37]  A jury instruction "need not be perfect, however, and a party does not have a right to a particular instruction in a particular form."[38]  Jury instructions must be "reasonably informative and not misleading, judged by common practices and standards of verbal communication."[39]

Here, the Court crafted the jury instructions with the considerations of those submitted by Counsel and the standard pattern instructions.[40]  The law contained therein was correct and applicable to the case, and when considered as a whole, allay alleged misleading of the jury.[41]

---

[34] Defs.' Mot. at 11–12.

[35] *Id*. at 11.

[36] *Lisowski v. Bayhealth Medical Center, Inc.*, 2016 WL 6995365, at *2 (Del. Super. Nov. 30, 2016).

[37] *Harris v. Cochran Oil Co.*, 2011 WL 3074419, at *3 (Del. July 26, 2011).

[38] *Id*.

[39] *Lisowski*, 2016 WL 6995365, at *2 (quoting *Lowther v. State*, 104 A.3d 840, 847 (Del. 2014)).

[40] Defs.' Proposed Jury Instructions, D.I. 268 (Mar. 18, 2022); Pls.' Proposed Jury Instructions, D.I. 277 (Mar. 24, 2022); Jury Instructions, D.I. 281 (Mar. 30, 2022).

[41] Jury Instructions, D.I. 281 (Mar. 30, 2022).

In the jury instruction requests made by both parties, the Court was provided with the contentions each party had regarding the liability of the other party. Plaintiffs' contentions were set forth in the proposed negligent design instruction,[42] and Defendants' list was in a separate instruction entitled "Defendant's Contentions."[43] Here, the Court gave the negligent design instruction proposed by the Plaintiffs and simply incorporated Defendants' contentions into the comparative negligence instruction.[44] This was a logical and common-sense place to put the "contentions" as it reflects it was the Defendants' burden to establish if the jury reached the issue of comparative negligence. The Court could have listed the Defendants' contentions in a separate instruction but connecting them to the burden of proof required of the Defendants provided better guidance to the jury and from the Court's view, a more favorable instruction to Plaintiffs. The Court also notes that the primary dispute regarding comparative negligence was not regarding Defendants' contentions but what would occur if the jury found Defendants' conduct was reckless. Plaintiffs argued that such a finding would moot the issue of comparative negligence altogether. Where in contrast, Defendants believed it would simply remove the 50% barrier to recovery. This appeared to be an issue not previously addressed by the Court and was an area of significant contention between

---

[42] Pl.'s Proposed Jury Instructions, D.I. 277, at 13 (Mar. 24, 2022).
[43] Defs.' Proposed Jury Instructions, D.I. 268, at 5-6 (Mar. 18, 2022).
[44] Jury Instructions, D.I. 281, at 10 (Mar. 30, 2022).

the parties and was the primary focus of the Court. The list of contentions issue was really one of form over substance.

The Court's presentation of the issues for the jury to decide through its jury instructions was fair, balanced and consistent with the requests made by the parties. Unfortunately for the Plaintiffs, they failed to establish their case, so the jury was never required to even consider Plaintiffs' clear negligence in this matter. A party is not prejudiced by an instruction that becomes immaterial based on the findings in the case. Plaintiffs' contentions here are simply unsupported.

D. Potential Juror Conflict

Lastly, Plaintiffs argue the Court failed to discharge Juror No. 9 who was represented by Defendants' local counsel, Young Conaway Stargatt & Taylor ("YCST") in another matter. Plaintiffs claim that, due to the previous representation, Juror No.9 was unable to render impartial jury service.[45] Defendants respond that there was no evidence that Juror No. 9 should have been precluded for cause because he was unable to render impartial jury service.[46]

Juror No. 9 was represented by an attorney from YCST in a worker's compensation action stemming from an injury suffered approximately four to five years ago.[47] During *voir dire*, Juror No. 9 explained that the lawsuit filed on his

---

[45] Pls.' Mot. at ¶ 8.
[46] Def.'s Mot. at 13.
[47] Defs.' Mot. Ex. K. Jury Selection Transcript. Mar. 17, 2022, at 145-47.

12

behalf had settled.[48]   The Court then questioned whether Juror No. 9's legal representation by YCST had caused him any concern, whether he would tend to give greater weight and credibility to YCST attorneys, and whether he was familiar with the YCST attorneys in this case.[49]   Juror No. 9 replied "no" to all of the questions posed and had no other reason for coming forward during *voir dire*.[50]   When asked by the Court if either Plaintiffs' or Defendants' counsel had any concerns, both sides replied in the negative.[51]   Based on the representations by Juror No. 9 and by Counsel, the Court found that Juror No. 9 could serve.[52]

There is nothing in the record to indicate any concern about the impartiality of Juror No. 9.  His representation by YCST was in a matter which occurred several years ago, was unrelated to the matter before the Court, and involved an attorney who was not involved in the current case.   Moreover, the Court highlights that the Plaintiffs did not raise any concerns during *voir dire* when asked by the Court. Accordingly, there is no legally cognizable reason to support the proposition that Juror No. 9 should have been precluded.  The Court is satisfied that Juror No. 9 was fair and listened to all the evidence presented.

---

[48] *Id.*
[49] *Id.* at 146–7.
[50] *Id.* at 147.
[51] *Id.*
[52] *Id.*

## IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion for a New Trial is **DENIED**.


**IT IS SO ORDERED.**


/s/ William C. Carpenter, Jr
Judge William C. Carpenter, Jr.