The CREDITORS' COMMITTEE OF ESSEX
BUILDERS, INC., Defend-
ant Below, Appellant,

v.

The FARMERS BANK of the State of Dela-
ware, Defendant Below, Appellee,

and

Killoran & Van Brunt, Plaintiff Below,
Appellee.

Supreme Court of Delaware.

March 6, 1969.

C. Waggaman Berl, Jr., of Booker, Leshem, Green & Shaffer, Wilmington, for defendant below, appellant.

Charles F. Richards, Jr., of Richards, Layton & Finger, Wilmington, for appellee, Farmers Bank.

CAREY and HERRMANN, Justices, and CHRISTIE, Judge, sitting.

CAREY, Justice:

The Creditors' Committee of Essex Builders, Inc. (Creditors) has appealed from a judgment of the Court of Chancery in favor of The Farmers Bank of the State of Delaware (Farmers). The suit below was a bill of interpleader filed by Killoran & Van Brunt, who had served as counsel for Creditors during the course of the events giving rise to this case. Those attorneys had in hand about $40,000, of

which Farmers claimed about $31,000. Creditors demanded not only the entire fund, but also an additional sum of money from Farmers. The Chancellor ultimately allowed Farmers about $26,000 and Creditors about $14,000 out of the fund, and denied Creditors any further recovery. This appeal followed.

The significant facts may be thus summarized: In 1954, Essex Builders, Inc., obtained a tract of land and started construction of a housing development. Mortgage financing for the construction was provided by Newark Trust Company, which merged with Farmers in 1956. Another bank participated with Farmers, but its name was not on the mortgage and it took no active part in handling the details. Farmers' Vice-President, Mr. Johnson, who had been an officer of Newark Trust Company, represented the bank throughout the transaction. By December, 1956, Essex Builders, Inc., was insolvent. Forty-five homes were in various stages of construction. The principal creditors were of the opinion that all debts could be paid through the completion and sale of the houses, and accordingly the Creditors' Committee was formed, which took over the project after reaching an understanding with Farmers. It was agreed that creditors who would thenceforth perform work on the houses (designated as "B creditors") would have priority for such work over existing claims other than the mortgage. Farmers agreed to refrain from foreclosing for the time being in order to give Creditors a chance to finish the houses, with the express stipulation, however, that it would be the sole judge of when and whether it exercised its right of foreclosure.

After work on the houses was resumed, further financial difficulty was encountered and Farmers advanced Creditors additional funds. The houses were completed, but they did not sell rapidly. At this time, Farmers set up on its own books a "suspense account" comprised of placement fees, origination fees, and service charges received by it in financing individual pur-

chasers of the houses. It is this suspense account which is the subject of the present difficulty.

Thereafter, it became obvious that sale of the forty-five houses would not pay all the creditors, and it was agreed that additional houses would be erected on another part of the lands. This was done, and by 1961, the final house was sold. The balance of the settlement proceeds is the money which has been paid into the Court of Chancery. As indicated above, however, the ultimate dispute here concerns the existence of any right of Creditors to any part of the suspense account still held in reserve by Farmers.

Creditors advance three theories in support of its claim: (1) there was an express agreement by Farmers to apply the fund to Creditors to the extent it might be needed to make them whole; (2) if no express contract existed, there was at least a contract to that effect implied in fact; and (3) if no express or implied contract existed, Creditors should have all or part of the fund on the theory of unjust enrichment. The Chancellor held against Creditors on all of these theories.

The Court below had the advantage of seeing and hearing the principal witnesses testify. Its conclusions of fact are, in our opinion, supported by sufficient evidence and we accept them as valid. Nardo v. Nardo, Del., 209 A.2d 905. We have examined the inferences drawn from those established facts, and find nothing in the record which would, in our opinion, warrant rejection by this Court of those inferences. Lank v. Steiner, Del., 224 A.2d 242.

■ The claim of Creditors that there was an express contract for the use of this suspense account to pay the "B creditors" is based primarily upon conversations held between certain creditors and Mr. John-

son.* The witnesses were not in agreement as to what was said. Johnson denied that he ever indicated that the fund would be available for this purpose; he thought he might have mentioned the possibility that some funds might be available if there was a profit on the resale of individual mortgages. No such profit ever materialized because of the tight money market. Mr. Van Brunt thought that the conversation was about this suspense account, but agreed that Mr. Johnson made no definite promises. Two of the creditors said that the statement was somewhat more definite. The Chancellor found that even the testimony most favorable to Creditors would only establish a general statement of a willingness to share the fund if needed, and that any such remark was not sufficiently definite to form the basis of an enforceable express contract. Restatement of Contracts § 2; Williston on Contracts (3rd Ed.) § 26; 17 Am.Jur.2d § 31. We agree with his conclusion that there was no express contract as claimed by Creditors.

■ Creditors' next contention is that the conduct of Farmers, through its cooperation, advancement of credit, and creation of the suspense account, warrants the inference that it intended to make the "B creditors" whole to the extent of the fund. A contract will be implied in fact only when the Court may fairly infer such an intent from the evidence; it represents the presumed intention of the parties as indicated by their conduct. 17 Am.Jur.2d § 3. The Chancellor held that the facts here did not justify such an implication. We agree.

■ As the Chancellor pointed out, all through this transaction, the bank retained its independence of action and reserved the right to determine for itself when and whether it would foreclose its mortgage. Such a foreclosure prior to completion of the houses would undoubtedly have greatly increased the loss sustained

---

* On one occasion, a remark was apparently made by the President of Farmers indicating a hope that Creditors would be paid in full; but that remark was far too vague to have any significance.

by Creditors. Both parties felt that their respective interests would be served by cooperation and extension of further credit. In short, each was acting for its own interest; those interests happened to coincide. Cooperation of Farmers clearly is an insufficient reason to imply an agreement to make up Creditors' losses. Likewise, the establishment of the suspense account does not necessarily indicate any intention to use it for that purpose. The testimony on behalf of Farmers was to the effect that the account was established solely to facilitate bookkeeping between Farmers and the participating bank. This seems the most reasonable explanation in the light of all the problems and the many transactions involved in the whole undertaking. Until final disposition of the whole project, it could not be definitely ascertained what profit, if any, would accrue to the bank, and it needed to hold some amount in reserve until this final determination. We think the Court below was right in holding that no contract was implied.

As to Creditors' argument concerning unjust enrichment, we also agree with the decision below. The argument seems to be that Farmers obtained a benefit through the efforts of Creditors, and that it would be unjust to permit Farmers to retain all of this money. We are unable to see where any injustice exists. Farmers held a preferred lien, as Creditors knew, and no injustice results from payment in full of its lien. As to the fees and other charges made by Farmers, there is nothing to indicate that they were not customary and proper; they were presumably made for services rendered in connection with the bank's purchase of the individual mortgages, which it did *at a discount several points less than the going rate.* Receipt of a benefit as the incidental result of someone else's activities is not enough to require restitution. Restatement on Restitution § 1, Comment (c). There is no evidence here of any mistake, coercion, or request which might change the result. Restatement on Restitution § 112.

For the foregoing reasons, the decision below will be affirmed.