# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 26, 2020

Jeffrey M. Weiner, Esquire
Law Offices of Jeffrey M. Weiner, P.A.
1332 King Street
Wilmington, DE 19801

Bartholomew J. Dalton, Esquire
Michael C. Dalton, Esquire
Dalton & Associates, P.A.
Cool Spring Meeting House
1106 West Tenth Street
Wilmington, DE  19806

RE:   *Weik, Nitsche & Dougherty, LLC et al., v. Samuel D. Pratcher, et al.,*
Civil Action No. 2018-0803-MTZ

Dear Counsel,

I write regarding the motion for judgment on the pleadings (the "Motion")
filed by Plaintiffs and Counterclaim Defendants Weik, Nitsche & Dougherty LLC
("WND") and Gary S. Nitsche, P.A. ("Nitsche, P.A.," and together with WND,
"Plaintiffs") with respect to counterclaims filed by Defendant and Counterclaim
Plaintiffs Samuel Pratcher, III, Nicholas M. Krayer, and Pratcher Krayer LLC
(collectively, "Defendants").[1]  For the reasons that follow, today I grant the Motion
in part, deny it in part, and ask the parties to submit supplemental letters of no more
than 1,000 words to assist in resolving the remaining issues.

---

[1] Docket Item ("D.I.") 37.

### A.    Defendants' Counterclaim And Plaintiffs' Motion

The parties are familiar with the factual allegations in this matter, and therefore, I do not detail them today.  This matter primarily involves a schism between a law firm and its partner, WND and Nitsche, P.A., and two former associates of the firm.[2]  Gary S. Nitsche, the individual, owns and controls all of the issued and outstanding shares of stock of Nitsche, P.A., and the allegations in this matter refer to Nitsche the individual acting on Nitsche, P.A.'s behalf.

After years as associates, Pratcher and Krayer co-managed personal injury cases that Nitsche originated; they also originated and managed their own cases, and were entitled to one-third of the fees from those cases.  To originate cases, Pratcher and Krayer self-marketed and advertised without explicitly identifying their affiliation with WND.  The parties dispute whether Nitsche and WND knew about and permitted Pratcher and Krayer's self-marketing activities.[3]

Eventually, Pratcher and Krayer wanted more compensation for their work, and Nitsche and WND agreed to begin compensating them as "partners" at the firm.  The new terms of Pratcher and Krayer's employment were memorialized in documents referred to as "Succession Agreements."  Among other things, the

---

[2] *See generally* D.I. 13 [hereinafter "Am. Compl."]; D.I. 33 [hereinafter "Countercl."].

[3] *See* D.I. 36 ¶¶ 16, 18, 19, 26, 36, 37, 38.

Succession Agreements increased the percentage of fees Pratcher and Krayer were entitled to from self-originated cases. Shortly after executing the Succession Agreements, Nitsche allegedly discovered Pratcher and Krayer's self-marketing campaigns and ordered them to desist; the parties' relationship then fractured. Pratcher and Krayer resigned from WND and opened their own firm, Pratcher Krayer LLC.

This action followed in November 2018.[4] In January 2019, Plaintiffs filed their Amended Complaint against Defendants seeking equitable rescission of the Succession Agreements; an accounting of all fees recovered for WND clients that elected to transfer their representation to Pratcher, Krayer, or Pratcher Krayer LLC; a declaratory judgment that any accounting between the parties be based on the terms of their pre-Succession Agreement relationship; a constructive trust for any monies or fees received, or expected to be received, by Defendants from those clients that elected to transfer their representation to Defendants; an injunction prohibiting Defendants from disclosing WND's confidential and proprietary information; and damages.[5]

---

[4] *See* D.I. 1.

[5] *See generally* Am. Compl.

Defendants unsuccessfully moved to dismiss Plaintiffs' Amended Complaint,[6] then filed their Answer and Counterclaim on January 23, 2020. Count I asserts a claim for breach of contract based on the Succession Agreements.[7] Count II asserts a claim for breach of the implied covenant of good faith and fair dealing.[8] In the event the Court voids the Succession Agreements as Plaintiffs request,[9] Defendants also plead non-contractual counterclaims in the alternative: Count III asserts breach of implied contract;[10] Count IV asserts promissory estoppel;[11] Count

---

[6] *See* D.I. 15, 27, 30, 35.

[7] *See* Countercl. ¶¶ 86–93.

[8] *See id.* ¶¶ 94–100.

[9] *See* Am. Compl. ¶¶ 32–41.

[10] *See* Countercl. ¶¶ 101–09. Defendants premise the alleged breaches underlying Counts I, II, and III on the allegations set forth in paragraph 89 of the Counterclaim. *See id.* ¶¶ 89, 97, 103. Paragraph 89 states,

> Plaintiffs/Counterclaim-Defendants worked to frustrate the bargained-for benefits of the Succession Agreements, including, but not limited to, the following conduct: a. Feigning ignorance of Pratcher and Krayer's self-marketing and advertising; b. Removing Pratcher and Krayer's direct dial phone numbers; c. Preventing Pratcher and Krayer's support staff from accessing their client files and cost sheets; d. Belatedly publishing a client intake policy that is at once in variance with the established custom of attorneys at WND, and contrary to the bargained-for benefits to Pratcher and Krayer as outlined in the Succession Agreements; e. Causing the preparation of a memorandum that falsely alleged Pratcher and Krayer fraudulently held funds settled in 2016 into 2017 to profit to a greater extent when the (then inchoate) Succession Agreements would be executed.

[11] *See id.* ¶¶ 110–15.

V asserts quantum meruit;[12] and Count VI asserts unjust enrichment.[13] Finally, Count VII asserts a violation of 19 *Del. C.* § 1103 for "wages" Pratcher and Krayer "were owed" "upon their resignation" from WND,[14] and Count VIII asserts a claim for intentional interference with prospective contractual relationship.[15]

On February 11, Plaintiffs filed their reply to the Counterclaim.[16] Plaintiffs also filed their Motion for judgment on the pleadings with respect to "Count VII and any aspect of any other Counterclaim based upon wages or salary" based on the statute of limitations.[17] In their March 13 opening brief, Plaintiffs contend they are entitled to judgment on the pleadings with respect to Counts I, II, III, V, VI, and VII of the Counterclaim because those counts are based on wages, not any expectation from an underlying promise or contract, and so are subject to the one-year statute of limitations set forth in 10 *Del. C.* § 8111, rather than the three-year statute of limitations set forth in 10 *Del. C.* § 8106(a).[18] Plaintiffs also expanded their grounds

---

[12] *See id.* ¶¶ 116–20.

[13] *See id.* ¶¶ 121–24.

[14] *Id.* ¶¶ 128; *see id.* ¶¶ 125–27, 129–32.

[15] *Id.* ¶¶ 133–38.

[16] D.I. 36.

[17] D.I. 37 ¶ 6.

[18] D.I. 49.

for judgment on the pleadings with respect to Counts II and III, asserting that Defendants failed to properly plead claims for breach of the implied covenant of good faith and fair dealing and breach of implied contract.

In their answering brief,[19] Defendants concede that Count VII is a claim for wages subject to Section 8111's one-year statute of limitations and that, accordingly, the claim should be dismissed. However, they maintain that the remainder of their claims are contractual in nature, are not claims for wages under Section 8111, and are therefore subject to the three-year statute of limitations. Defendants further contend that Plaintiffs improperly expanded the grounds for the Motion by raising additional arguments with respect to Counts II and III in their opening brief. But if the Court is to consider those arguments, Defendants maintain they adequately pled those claims. Plaintiffs replied.[20]

The parties jointly requested that the Court decide the Motion on the papers.[21] In considering a motion for judgment on the pleadings, the Court views the facts pled and the reasonable inferences to be drawn therefrom in a light most favorable

---

[19] D.I. 55.

[20] D.I. 58.

[21] *See* D.I. 47.

to the non-moving party.[22]  The Court grants such a motion only where no material issue of fact exists and where the movants—here, Plaintiffs—are entitled to a judgment as a matter of law.[23]

The pleadings and briefing did not adequately apprise the Court of the parties' respective theories and the application of governing law with respect to Counts I, II, III, V, and VI.  Accordingly, I rule on certain preliminary arguments, share my thoughts on the applicable law to focus the parties' arguments, and request supplemental briefing.

### B.     Counts IV And VIII May Proceed, And Plaintiffs Are Entitled To Judgment On Count VII.

As an initial matter, because Plaintiffs' Motion addresses only Counts I, II, III, V, VI, and VII of the Counterclaim, Defendants' Counterclaim proceeds on Count IV for promissory estoppel and Count VIII for intentional interference with

---

[22] *See, e.g.*, *Pullin v. Davis*, 2016 WL 4679246, at *1 (Del. Ch. Sept. 7, 2016).

[23] *See, e.g.*, *id.*; *Fiat N. Am. LLC v. UAW Retiree Med. Benefits Tr.*, 2013 WL 3963684, at *7 (Del. Ch. July 30, 2013).  Based on admissions and denials in Plaintiffs' reply, I note several relevant material issues of fact, including whether (1) Plaintiffs "expressly permitted" "Pratcher and Krayer to engage in self-marketing and advertising" "from the beginning of their employment," D.I. 36 ¶¶ 16, 19; (2) "Pratcher made clear to [Nitsche] that he would only join WND if he were permitted to engage in self-marketing and advertising," *id.* ¶ 18; (3) Nitsche also engaged in self-advertising using a direct dial phone number, *id.* ¶ 26; (4) Nitsche had actual knowledge that Defendants were engaged in self-advertising, *id.* ¶¶ 36, 37; and (5) if Nitsche did have actual knowledge of Defendants' conduct, he objected thereto, *id.* ¶ 38.

prospective contractual relationship.[24]  And in light of Defendants' concession that

Count VII is a claim for wages subject to Section 8111's one-year statute of

limitations, Plaintiffs are entitled to judgment as a matter of law with respect to

Count VII.[25]

C.      **Plaintiffs Properly Raised All Arguments In The Motion And Opening Brief.**

I now turn to Defendants' assertion that Plaintiffs improperly expanded the

grounds for the Motion in their opening brief.  "Under the briefing rules, a party is

obliged in its motion *and* opening brief to set forth all of the grounds, authorities and

arguments supporting its motion.  A movant should not hold matters in reserve for

reply briefs."[26]  The movant must set forth enough information in his motion and

opening brief to present all arguments so that the nonmovant is "afforded an

---

[24] *See* D.I. 49, 55.

[25] *Accord, e.g.*, *Turner v. Diamond Shamrock Chem. Co.*, 1987 WL 17175, at *2 (Del. Feb. 8, 1897) (applying Section 8111's one-year limitation period to a claim arising under Section 1108 of the Delaware Wage Payment and Collection Act ("DWPCA")); *Girardot v. Chemours Co.*, 2018 WL 1472337, at *3 (Del. Super. Ct. Mar. 26, 2018) ("Section 8111 of Title 10 of the Delaware Code states that any claim for wages for work or any other benefits arising from such work expires 1 year from the accruing of the cause of action on which such action is based.  This one-year statute of limitations applies to DWPCA claims."  (footnotes and quotations omitted)).

[26] *Franklin Balance Sheet Inv. Fund v. Crowley*, 2006 WL 3095952, at *4 (Del. Ch. Oct. 19, 2006) (emphasis added) (footnotes omitted).

adequate opportunity to assess the pertinent information before filing their answering brief."[27]

Plaintiffs' opening brief "set forth all of the grounds, authorities and arguments supporting [their] motion."[28] As evidenced by Defendants' answering brief, Plaintiffs' Motion and opening brief presented sufficient information to "afford[] [Defendants] an adequate opportunity to assess the pertinent information before filing their answering brief."[29] "Moreover, Delaware law has a strong preference for deciding cases on the merits, rather than on procedural grounds."[30] Accordingly, I consider Plaintiffs' arguments presented for the first time in their opening brief.

### D. Defendants Have Adequately Pled Count III In The Alternative.

Having determined that Plaintiffs appropriately raised an additional ground for judgment with respect to Count III, I address that argument today. Plaintiffs contend that, in my December 2019 ruling on Defendants' motion to dismiss, I "ruled that an agreement exists between the parties," and so Count III "should be

---

[27] *Id.* at *5.

[28] *Id.* at *4.

[29] *Id.* at *5.

[30] *Id.*

dismissed, as a claim for breach of implied contract cannot proceed when an express contract has been found."[31] This argument is inconsistent with Plaintiffs' affirmative claims in the Amended Complaint seeking to void or rescind the Succession Agreements. Defendants retort, and I agree, that Count III is pled in the alternative "if the Succession Agreements are voided"[32] as Plaintiffs request in the Amended Complaint.

Plaintiffs are correct that if the parties' relationship is comprehensively governed by contract, a claim for implied contract cannot stand.[33] "A contractual obligation cannot be implied where an express obligation exists. A court will only consider recovery under an implied contract if there is no express contract which governs the parties' rights and obligations. An implied contractual obligation cannot 'flow from matters expressly addressed' in a written contract."[34] Rather, "[a] contract will be implied in fact only when the Court may fairly infer such an intent

---

[31] D.I. 49 at 27 (citing *Klehr, Harrison, Harvey, Bransburg & Ellers, LLP v. Mosacia Educ. Inc.*, 2009 WL 5177144, at *2 (Del. Super. Dec. 14, 2009)).

[32] Countercl. ¶¶ 102 ("If the Succession Agreements are voided, then the parties are subject to an implied-in-fact contract of employment."), 111 ("If the Succession Agreements are voided, then the parties are subject to an implied-in-fact contract of employment."), 117 ("If the Succession Agreements are voided, then Defendants/Counterclaim-Plaintiffs substantially contributed to the recovery of proceeds from settling cases . . . .").

[33] *See, e.g.*, *Good v. Moyer*, 2012 WL 4857367, at *5 (Del. Super. Ct. Oct. 10, 2012).

[34] *Id.* (footnotes omitted) (quoting *Moore Bus. Forms v. Cordant Hldgs. Corp.*, 1995 WL 662685, at *9 (Del. Ch. Nov. 2, 1995)).

from the evidence; it represents the presumed intention of the parties as indicated by their conduct."[35]

The Succession Agreements are express contracts that govern the parties' employment relationship. But Plaintiffs' Count I "respectfully request[s] that this Court declare the June 6, 2017 Succession Agreements void *ab initio*, cancel/rescind the June 6, 2017 Succession Agreements, and return the parties to the *status quo ante*."[36] And contrary to Plaintiffs' argument on this Motion, I did not previously "rule[] that an agreement exists between the parties."[37] I ruled that Plaintiffs' claim to void the Succession Agreement survived Defendants' motion for failure to state a claim.[38] Plaintiffs' claim for equitable recession, and their theory that the Succession

---

[35] *Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 794 A.2d 1211, 1238 (Del. Ch. 2001) (quoting *Creditors' Comm. of Essex Builders, Inc. v. Farmers Bank*, 251 A.2d 546, 548 (Del. 1969)), *rev'd on other grounds*, 817 A.2d 149 (Del. 2002).

[36] Am. Compl. at 18.

[37] D.I. 49 at 27.

[38] *See* D.I. 35 at 16 ("The amended complaint also requests that this Court declare the agreements void or cancel or rescind the agreements and return the parties to the status quo. Defendants have failed to show that plaintiffs could not recover under any reasonably conceivable set of circumstances susceptible of proof. Defendants' motion to dismiss Count I for failure to state a claim is denied.").

Agreements should be void to return the parties to their pre-June 2017 position,

remains a viable claim in this case.

In view of that claim, Defendants brought Count III in the alternative. Under

Court of Chancery Rule 8, they are permitted to do so:

> A party may set forth 2 or more statements of a claim or defense alternately or hypothetically, either in 1 count or defense or in separate counts or defenses. When 2 or more statements are made in the alternative and 1 of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of 1 or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency.[39]

Although Defendants have the right to plead an alternative theory of recovery to a

breach of contract claim, "[a] right to plead alternative theories does not obviate the

obligation to provide factual support for each theory."[40] The alternative claim must

have an independent basis that is not comprehensively governed by the

---

[39] Ct. Ch. R. 8(e)(2); *see also CMS Inv. Hldgs., LLC v. Castle*, 2015 WL 3894021, at *17 (Del. Ch. June 23, 2015) ("[I]t is not unusual for plaintiffs to attempt to supplement claims for breach of contract with additional claims [pled in the alternative], generally as a hedge against the possibility that the court might conclude that there was no formal contract between the parties.").

[40] *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *8 (Del. Ch. Feb. 3, 2009); *accord CMS Inv. Hldgs.*, 2015 WL 3894021, at *17 n.97.

accompanying breach of contract claim.[41] Defendants offer such a basis for their implied contract claim: Plaintiffs' claim that no express contract exists.

Defendants have also provided independent factual support for their implied contract theory, based on reading the Counterclaim in the light most favorable to Defendants.[42] Pratcher and Krayer joined WND as associate attorneys in 2012, executed the Succession Agreements in June 2017, and resigned in November 2017.[43] Defendants allege, and Plaintiffs do not meaningfully dispute, that no express or formal employment contract governed their employment relationship from 2012 until June 2017, when the parties executed the Succession Agreements.[44] Further, if the Succession Agreements are voided in Plaintiffs' favor, then no express contract would control the parties' employment relationship from June 2017 onward. Defendants allege a course of dealing that governed the parties' relationship between 2012 and the June 2017 execution of the Succession Agreements,[45] in addition to a course of dealing between the parties from execution through resignation.[46] Under

---

[41] *See CMS Inv. Hldgs.*, 2015 WL 3894021, at *17; *BAE Sys. Info. & Elec. Sys. Integration*, 2009 WL 264088, at *8.

[42] *BAE Sys. Info. & Elec. Sys. Integration*, 2009 WL 264088, at *8.

[43] *See* Countercl. ¶¶ 2, 3, 60, 81.

[44] *Id.* ¶¶ 7, 60.

[45] *See, e.g.*, *id.* ¶¶ 8–15, 20–21, 41, 56, 101–02, 106–08.

[46] *See id.* ¶¶ 61, 63, 65, 66, 69, 71–76, 78, 80.

that course of dealing, Defendants were paid approximately $150,000 per year until that salary was reduced in 2017;[47] Defendants were entitled to a percentage of fees from cases they originated while at WND;[48] Defendants were entitled to a year-end bonus of approximately $30,000 in 2017;[49] Defendants openly self-advertised and marketed through the duration of their employment for WND, and Plaintiff at least reasonably could have discovered that conduct, but did not address or prohibit such conduct until August 2017;[50] and Defendants expended out-of-pocket marketing and advertising costs that WND did not agree to reimburse until June 2017.[51] Assuming that the Succession Agreements are void, Defendants allege that these terms, among others, governed the parties' relationship and that Plaintiffs breached.[52]

Defendants have adequately alleged, and the Court may reasonably infer, an implied contract between the parties to "represent[] the presumed intention of the parties as indicated by their conduct."[53] Count III is not duplicative of Count I. It

---

[47] *See id.* ¶¶ 8, 106.

[48] *See id.* ¶¶ 14, 15.

[49] *See id.* ¶¶ 10, 11, 13, 107.

[50] *See, e.g., id.* ¶¶ 39–45, 66, 104.

[51] *See id.* ¶¶ 20, 108.

[52] *See id.* ¶¶ 102–03, 105–07.

[53] *Parfi Hldg. AB*, 794 A.2d at 1238.

may proceed as long as it is not a claim for wages barred by the statute of limitations,

which I discuss next.

### E. The One-Year Statute Of Limitations Applies To Any Claim For Services Performed.

Finally, I turn to Plaintiffs' primary argument that Counts I, II, III, V, and VI

are claims for wages subject to a one-year statute of limitations under 10 *Del. C.*

§ 8111, rather than contract claims subject to the three-year statute of limitations

under 10 *Del. C.* § 8106(a).[54] Plaintiffs contend they are entitled to judgment on

those Counts as a matter of law. Defendants maintain that Counts I, II, III, V, and

VI are contractual, not claims for wages, and are therefore subject to the three-year

statute of limitations.[55] "The parties' dueling arguments once again present a

---

[54] D.I. 49.

[55] Defendants also argue that "Delaware law is inequitable in its application of statutes of limitations for a compulsory counterclaim involving the same transaction or occurrence stated in the complaint." D.I. 55 at 8. That argument is contrary to Delaware law. *See, e.g.*, *Del. Chems., Inc. v. Reichhold Chems., Inc.*, 121 A.2d 913, 918 (Del. Ch. 1956) (rejecting a defendant's argument that the statute of limitations did not apply to a compulsory counterclaim, and holding, "The three year statute of limitations relied upon by plaintiff, 10 *Del. C.* § 8106, applies to any 'action' enumerated therein. I believe a counterclaim seeking affirmative relief is an 'action' within the meaning of the statute. The fact that it appears in a counterclaim cannot obscure the fact that it has all the characteristics of an independent action.").

Delaware trial court with a question about the appropriate spheres of § 8111 and § 8106."[56]

Section 8106(a) establishes a three-year statute of limitations for contract claims or any "action based on a promise."[57]  Section 8111 establishes the applicable statute of limitations for "work, labor or personal services":

> No action for recovery upon a claim for wages, salary, or overtime for work, labor or personal services performed, or for damages (actual, compensatory or punitive, liquidated or otherwise), or for interest or penalties resulting from the failure to pay any such claim, or for any other benefits arising from such work, labor or personal services performed or in connection with any such action, shall be brought after the expiration of 1 year from the accruing of the cause of action on which such action is based.[58]

The Delaware Code defines "wages" as "compensation for labor or services rendered by an employee, whether the amount is fixed or determined on a time, task, piece, commission or other basis of calculation."[59]   Section 8111 "has a comprehensive sweep,"[60] and "'was intended to bar all claims arising out of the

---

[56] *Little Switz., Inc. v. Hopper*, 867 A.2d 955, 958 (Del. Ch. 2005).

[57] 10 *Del. C.* § 8106(a).

[58] 10 *Del. C.* § 8111.

[59] 19 *Del. C.* § 1101(a)(5).  Although this definition of "wages" originates from the DWPCA, I find the definition instructive, especially given that Section 8111 often arises in the context of the DWPCA.  *See, e.g.*, *Turner*, 1987 WL 17175, at *2; *Girardot*, 2018 WL 1472337, at *1.

[60] *Sorensen v. Overland Corp.*, 142 F. Supp. 354, 360 (D. Del. 1956), *aff'd* 242 F.2d 70 (3d Cir. 1957); *see also Hopper*, 867 A.2d at 956–57.  In *Stifel Fin. Corp. v. Cochran*

employer-employee relationship', for the reason that a claim arising out of that relationship would necessarily be one referable to the period during which the relationship existed, not after its termination."[61]

    As this Court has recognized,

> [t]he relationship between the statutes is obvious because an employee's entitlement to wages, salary, overtime or other benefits will usually arise out of a written or oral contract that specifies the amount and nature of the reward the employee was to receive for her efforts. Put otherwise, almost every claim for an item specifically mentioned in § 8111 will arise out of a contract generally covered by § 8106.[62]

To determine what statute of limitations applies, the Court asks "whether [the] claims are properly characterized as employment claims or contract/statutory claims."[63] This Court uses a "temporal test" to determine whether a claim is "for wages" or arises from an expectancy related to some underlying promise.[64] Section

---

*(Cochran II)*, 809 A.2d 555, 558–59 (Del. 2002), our Supreme Court flagged that it did not expressly approve *Sorenson* in prior rulings, but explained that *Sorensen*'s broad reading of Section 8111 was consistent with *Goldman v. Braunstein's, Inc.*, 240 A.2d 577 (Del. 1968).

[61] *Goldman*, 240 A.2d at 578 (quoting *Sorensen*, 142 F. Supp. at 360).

[62] *Hopper*, 867 A.2d at 958.

[63] *Cochran II*, 809 A.2d at 558.

[64] *Hopper*, 867 A.2d at 960; *Goldman*, 240 A.2d at 578; *see also Cochran v. Stifel Fin. Corp. (Cochran I)*, 2000 WL 286722, at *7 (Del. Ch. Mar. 8, 2000) ("Delaware courts have since followed the temporal line drawn by *Goldman*. In situations where the benefit sought by the plaintiff arose out of the plaintiff's past service as an employee, Delaware courts have applied § 8111. But where the damages sought by the plaintiff were for benefits connected with services the plaintiff would have performed but for his allegedly wrongful

8111 applies to "claims arising out of services [already] performed," and consequently "damages" "arising from services which have been performed."[65] This is true "even though the work may have originally been undertaken on the strength of a promise. Since the services have been completed, the action is based upon the service performed rather than on the original promise."[66] And this Court has warned that "Delaware courts should resist the further erosion of § 8111, by respecting the intention reflected in its plain language to cover in broad terms most claims arising out of the employment relationship."[67]

In contrast to Section 8111, Section 8106 applies to "claims arising upon or after termination of the employer-employee relationship."[68] "The three-year statute applies to claims based on work or services not yet completed as to which a promise

termination, our courts have applied § 8106." (footnotes omitted)), *aff'd in part, rev'd in part*, *Cochran II*, 809 A.2d 555 (Del. 2002); *Compass v. Am. Mirrex Corp.*, 72 F. Supp. 2d 462, 467–68 (D. Del. 1999) (holding that if plaintiff alleges a breach of a duty to provide benefits for work already performed, then Section 8111 applies, but if plaintiff alleges employer breached a different duty arising out of employment agreement, then Section 8106 applies).

[65] *Goldman*, 240 A.2d at 578; *accord Cochran II*, 809 A.2d at 558.

[66] *Cochran I*, 2000 WL 286722, at *7 (quoting *Brown v. Colonial Chevrolet Co.*, 249 A.2d 439, 441 (Del. Super. 1968) ("No doubt most employment relationships, even if fully executed on the part of the employee, are originally undertaken on the strength of some sort of promise.")).

[67] *Hopper*, 867 A.2d at 956–57.

[68] *Cochran II*, 809 A.2d at 558 (citing *Goldman*, 240 A.2d at 578); *accord Hopper*, 867 A.2d at 959.

has been made. Since the work remains uncompleted, an action with respect such work is necessarily based upon the underlying promise."[69] But "if there is doubt as to which of two statutes of limitations applies, that doubt should be resolved in favor of the longer period."[70]

Here, I agree with Plaintiffs that Counts I, II, III, V, and VI, at least in part, are claims for wages that are subject to Section 8111's one-year statute of limitations. This conclusion is based primarily on the plain language of Defendants' allegations, which indicate that Defendants seek compensation for cases they originated and settled before resigning from WND,[71] despite conclusory allegations that their claims are based on Pratcher and Krayer's "expectancy in the contracts."[72]

---

[69] *Cochran I*, 2000 WL 286722, at *7 (quoting *Brown*, 249 A.2d at 441).

[70] *Cochran II*, 809 A.2d at 559 (citing *Sonne v. Sacks*, 314 A.2d 194, 196 (Del. 1973)).

[71] *See, e.g.*, Countercl. ¶¶ 93 (hinging damages on "Fees Generated as of Nov. 7, 2017" and "Cases Settled"), 109 (hinging damages on "Fees Generated in Originated Cases as of Nov. 7, 2017" and "Cases Settled"), 118 (stating Pratcher and Krayer "contributed to the recovery of proceeds from settling cases," and they "are entitled to the attorneys' fees recovered based on the substantial value they added to [cases they originated while working for WND] through their efforts"), 119 (stating Pratcher and Krayer "assumed representation of several cases"), 120 (stating Plaintiffs "failed to pay [Defendants] a portion of the attorneys' fees in these cases"), 122 (stating Pratcher and Krayer "substantially contributed to the recovery of proceeds from settling cases for which they may not be adequately compensated"), 124 (stating Pratcher and Krayer are "without a remedy for the unjust retention of fees they are owed"), 128 (stating Pratcher and Krayer "were owed 'wages' . . . as that term is defined in § 1101"), 130 (stating Plaintiffs "failed to pay such wages).

[72] *Id.* ¶ 92; *see also, e.g.*, *id.* ¶¶ 93 (noting what Pratcher and Krayer "expected to recover"), 100 (noting Plaintiffs' alleged breach caused Pratcher and Krayer "to resign and lose their

To the extent any alleged damages are unpaid compensation for services performed, the claims are subject to Section 8111. But to the extent any alleged damages would have been owed to Pratcher and Krayer after and because of a breach of the Succession Agreements, the claims are subject to Section 8106.

Paragraphs 93 and 109 of the Counterclaim provide charts of funds sought. Those charts, in view of Defendants' competing specific allegations of wages and conclusory allegations of an expectancy, do not explain which funds are unpaid compensation for services performed, and which, if any, are damages flowing from a breach of the Succession Agreement. I am unable to apply Defendants' characterizations of "fees generated in originated cases" and "expected" salary and bonus.[73] To ensure my ruling is fully informed and that I am properly making reasonable inferences in Defendants' favor, I invite the parties to explain and further parse what portion of funds in the charts arise from attorneys' fees from cases Pratcher and Krayer originated and settled that WND received before November 7, 2017, as opposed to any expectancy under the Succession Agreements.

---

expected profits from the Succession Agreement"), 109 (hinging damages, in part, on "Expected 2017 Salary" and "Expected 2017 Bonus").

[73] *Id.* ¶¶ 93, 109.

With respect to the latter, considering this Court's recognition that "almost every claim for an item specifically mentioned in § 8111 will arise out of a contract generally covered by § 8106"[74] and admonition to maintain Section 8111's reach and significance,[75] I expect Defendants to specifically identify any expectancy under the Succession Agreements and distinguish any such expectancy from services already performed.[76] I also invite the parties to explain the quantitative differences between the charts in paragraphs 93 and 109.[77]

Accordingly, the parties shall submit supplemental letter briefs of no more than 1,000 words. Defendants shall submit their letter first, and then Plaintiffs shall

---

[74] *Hopper*, 867 A.2d at 958.

[75] *Id.* at 956–57.

[76] By this request for supplemental briefing, I do not mean to impose any particular pleading standard on expectancy claims that are otherwise in tension with Section 8111. I simply find the pleadings here confusing.

[77] Defendants argue that, based on my December 30, 2019, ruling on the motion to dismiss, they should not be considered "employees" and therefore their claims are not subject to Section 8106. *See* D.I. 55 at 15–17. I reject this position. Section 8111's application does not hinge on whether Pratcher and Krayer are "employees" of WND, but instead on whether their claims are for services already performed. *See* 10 *Del. C.* § 8111. And Defendants asserted Count VII, which expressly relies on characterizing them as "employees," after I ruled on the motion to dismiss that it was reasonably conceivable that Pratcher and Krayer entered into a partnership with Nitsche under the Succession Agreements. Nowhere in their Counterclaim do Defendants plead they were, in fact, WND partners or that they seek to recoup partnership proceeds. To the extent Defendants contend my December ruling bears on this Motion, I invite the parties to address the extent to which the damages Defendants seek are partnership proceeds and whether that alters my inquiry under Section 8111 in their supplemental letter briefs.

respond, on a stipulated briefing schedule.  Thereafter, I will issue my final decision on the Motion.

In conclusion, Plaintiffs are entitled to judgment as a matter of law with respect to Count VII; Plaintiffs' Motion is denied as to Count III; and Plaintiffs' Motion is granted insofar as Counts I, II, III, V, and VI are claims for wages that are subject to Section 8111's one-year statute of limitations, to be delineated with the benefit of supplemental briefing.  Plaintiffs' Motion also remains under advisement with regard to whether Defendants' Count II states a claim for breach of the implied covenant of good faith and fair dealing.  To the extent an order is necessary to implement my holdings today, IT IS SO ORDERED.

Sincerely,
*/s/ Morgan T. Zurn*
Vice Chancellor

MTZ/ms
cc:  All Counsel of Record via *File & ServeXpress*